UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN<br>LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>SECRETARY, UNITED STATES<br>DEPARTMENT OF THE INTERIOR,<br><br>    Defendant. | Case No. 1:16-cv-699<br><br>Judge Michael R. Barrett<br><br>**OPINION & ORDER** |

This matter is before the Court on the motion to dismiss—or in the alternative, to transfer—filed by Defendant, the Secretary of the United States Department of the Interior. (Doc. 49). Plaintiff Great American Life Insurance Company ("GALIC")[1] has responded in opposition, seeking a transfer of venue and moving to vacate the Court's prior denial of summary judgment. (Doc. 51). The Secretary opposes vacatur. (Doc. 52). For the following reasons, the Court will grant the Secretary's motion in the alternative and grant GALIC's motion in full.

I.    **BACKGROUND**

On June 24, 2010, the Department of the Interior ("Department")—through the Bureau of Indian Affairs ("BIA") and its Loan Guaranty, Insurance, and Interest Subsidy

---

[1] GALIC is now known as MassMutual Ascent Life Insurance Company. (Doc. 51, PageID 9231). In the interest of clarity and for ease of reference, however, the Court will continue to refer to Plaintiff as GALIC.

1

Program under the Indian Financing Act of 1974 ("IFA"), Pub. L. No. 93-262, 25 U.S.C. §§ 1451, *et seq.*—issued a loan guaranty certificate to Lower Brule Community Development Enterprise, LLC ("LBCDE").[2] (Doc. 17, PageID 189-92). The guaranty certificate was issued in connection with a proposed loan agreement between LBCDE and LBC Western Holdings, LLC,[3] and reflected a principal loan amount of $22,519,638.00. (Doc. 28, PageID 253).

Under the terms of the certificate, the Department would guarantee up to ninety percent of the loan, or $20,267,674.20, plus applicable interest. (*Id.*, PageID 254). GALIC alleges that it purchased the loan from LBCDE in April 2012 for $22,368,035.51 and notified the Department of its purchase shortly thereafter. (*Id.*). The Department acknowledged receipt of the transfer notice, stating that the "notice appear[ed] to be in order," and that GALIC was "now the lender" under the loan guaranty certificate. (*Id.*, PageID 350-51).

In April 2013, GALIC issued a notice to LBC Western Holdings of an event of default, citing the failure to make a scheduled payment under the loan on April 1, 2013. GALIC also provided notice to the Department. (*Id.*, PageID 255). On June 19, 2013, GALIC informed LBC Western Holdings that it would be accelerating the loan, citing the

---

[2] "The purpose of the Program is to encourage eligible borrowers to develop viable Indian businesses through conventional lender financing. The direct function of the Program is to help lenders reduce excessive risks on loans they make. That function in turn helps borrowers secure conventional financing that might otherwise be unavailable." 25 C.F.R. § 103.2. Specifically, the guaranty and insurance provisions allow the Secretary to "guarantee up to 90 per cent of the unpaid principal and interest due on any loan made to approved organizations of Indians and individual Indians." *United Nat'l Bank v. United States Dep't of the Interior*, 54 F.Supp.2d 1309, 1311 (S.D. Fla. 1998). In the event of a default, reimbursement by the Department is not automatic; lenders must also comply with the statutory framework and regulatory requirements of the IFA. *See* 25 C.F.R. §§ 103.30-103.43.

[3] LBC Western Holdings is a subsidiary of the Lower Brule Corporation, which is a federally chartered tribal corporation formed in 2007 and wholly owned by the Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota. (Doc. 28, PageID 253).

failure to make scheduled payments on May 1 and June 1. (*Id.*). GALIC advised the Department of the acceleration in a separate letter, stating that it was invoking its right to submit a "claim for loss" under the loan guaranty certificate. (*Id.*). GALIC's claim was $20,043,618.67, representing ninety percent of the purported outstanding loan principal balance, plus accrued interest. (*Id.*).

In December 2013, the Department advised GALIC that it was rejecting the claim for loss after concluding that GALIC "failed to maintain and produce documentation that the guaranty was in effect under 25 C.F.R. § 103.18(a)." (Doc. 10, PageID 78). Specifically, the Department concluded that GALIC "failed to provide sufficient documentation to show that: (1) the Loan was ever made; (2) the Loan was ever funded; or (3) the funding, if it occurred, was spent in accordance with the conditions of the guaranty." (*Id.*). GALIC filed an administrative appeal with the Interior Board of Indian Appeals, which affirmed the Department's decision on the ground that GALIC had not provided sufficient documentation to show that the loan ever funded. (*Id.*, PageID 106).

GALIC sued the Department, the Secretary, and two Department employees in 2016, bringing nine claims for relief. In 2019, the Court dismissed the bulk of GALIC's claims, leaving in place only its breach of contract and declaratory judgment claims against the Secretary. (Doc. 20, PageID 211). GALIC subsequently moved for summary judgment, contending that "[a]s a matter of law, the issuance of the Loan Certificate Guaranty is dispositive and precludes the Secretary from denying GALIC's claim for enforcement of the Guaranty now." (Doc. 28, PageID 257). The Secretary, while acknowledging the existence of the guaranty itself, argued that GALIC never provided evidence of the loan being funded, and that it therefore misinterpreted key statutory and

regulatory provisions. Ultimately, the Secretary maintained "[t]here is nothing in the plain language of any statute that suggests Congress intended that the mere issuance of a Guaranty creates an absolute right to pay." (Doc. 33, PageID 422).

The Court denied GALIC's motion for summary judgment, finding in relevant part that (1) the mere eligibility of the loan for the guaranty did not, on its own, lead to reimbursement in the event of a default; (2) Congress did not intend for 25 U.S.C. § 1494 to preclude the Secretary from establishing defenses against a transferee lender; and (3) "because the parties contest material facts related to the funding of the loan and whether GALIC complied with each of its obligations, summary judgment is simply not appropriate at this time." *Great Am. Life Ins. Co. v. Sec'y of Interior*, ___ F.Supp.3d ___, 2024 U.S. Dist. LEXIS 61658, *10 (S.D. Ohio Mar. 29, 2024). Following a status conference during which the Secretary raised the possibility of a jurisdictional defect, the Court ordered supplemental briefing on subject matter jurisdiction and the applicability of the Tucker Act, 28 U.S.C. § 1491, to GALIC's remaining claims. That issue is now ripe for the Court's review.

## II. STANDARDS OF LAW

### a. Subject Matter Jurisdiction

It is axiomatic that a federal court must, at all times, possess subject matter jurisdiction in order to preside over the cases before it. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 344 (6th Cir. 2008) ("The bedrock principle of the federal judicial system is that federal courts are courts of limited jurisdiction."). Indeed, "[p]arties cannot create subject matter jurisdiction . . . where none exists, nor can they waive a court's lack of subject matter jurisdiction." *Douglas v. E.G.*

*Baldwin & Assocs.*, 150 F.3d 604, 608 (6th Cir. 1998); *see Ryan v. McDonald*, 191 F.Supp.3d 729, 735 (N.D. Ohio 2016) ("Lack of subject matter jurisdiction is a non-waivable, fatal defect" that can be raised at any time during the pendency of a matter).

"In reviewing a Rule 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction to survive the motion and the Court has the power to resolve factual disputes." *Williamson v. Rexam Bev. Can Co.*, 497 F.Supp.2d 900, 904 (S.D. Ohio 2007). Although Rule 12(h)(3) provides that a court must dismiss an action in the absence of subject matter jurisdiction, "28 U.S.C. § 1631 permits transfer of a case when the court finds 'a want of jurisdiction,'" if that transfer would be in the interest of justice. *Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009); *cf. Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 780-81 (Fed. Cir. 2021) ("A proper 28 U.S.C. § 1631 transfer requires both that the transferor court lack jurisdiction and that the transferee court have it."). That determination rests with the Court's "sound discretion." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998); *see Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483-84 (6th Cir. 2009).

### b. Tucker Act Jurisdiction

"Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has *exclusive* jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'" *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998) (emphasis added). The Tucker Act is "a jurisdictional provision that operate[s] to waive sovereign immunity

5

for claims premised on other sources of law (e.g., statutes or contracts)." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

Notably, the Tucker Act "does not confer any substantive rights enforceable against the United States," but instead "merely confers jurisdiction when a substantive right otherwise exists." *Leonard v. Orr*, 590 F.Supp. 474, 478 (S.D. Ohio 1984); *see Brott v. United States*, 858 F.3d 425, 429-30 (6th Cir. 2017). In this context, "[a] substantive law provides jurisdiction only if it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). "This requirement is commonly termed as the 'money-mandating' requirement." *Id.*; *cf. Navajo Nation*, 556 U.S. at 291 ("The other source of law need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages.").

"The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies." *United States v. Bormes*, 568 U.S. 6, 12 (2012). "To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" *Horne v. Dep't of Agric.*, 595 U.S. 513, 527 (2013) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). "Displacement requires an unambiguous intent, even where a comprehensive remedial scheme is present." *BP Expl. & Prod. v. United States*, 142 Fed. Cl. 579, 591 (2019); *see Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984).

6

## III. ANALYSIS

### a. Jurisdiction and Venue

As an initial matter, the Court finds that the IFA is a money-mandating source of law. While true that the IFA does not create an entitlement in a such way that leaves the government with no discretion over the payment of funds, it can nevertheless be classified as a money-mandating source because it is fairly read to "compel payment on satisfaction of certain conditions." *Samish Indian Nation v. United States*, 657 F.3d 1330, 1336 (Fed. Cir. 2011), *vacated in part on other grounds*, 568 U.S. 936 (2012) (mem.); *see Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967) ("Under [28 U.S.C. §] 1491, what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.").

The resolution of this issue, then, hinges upon the language of the "sue-and-be-sued" clause of the IFA, which provides that "the Secretary may . . . sue and be sued in his official capacity in any court of competent jurisdiction." 25 U.S.C. § 1496(a). "A court of competent jurisdiction is a court with the power to adjudicate the case before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017). But a forum designation, for these purposes, must be detailed in such a way that it "precisely define[s] the appropriate forum." *Bormes*, 586 U.S. at 15. The IFA's designation of a "court of competent jurisdiction" does not clear that threshold.

Among the most instructive case law on this point is *Abbey v. United States*, 745 F.3d 1363 (Fed. Cir. 2014). There, the Federal Circuit held that the Fair Labor Standards Act did not displace the Tucker Act because the jurisdictional language of the former—

referencing "any Federal or State court of competent jurisdiction"—had "no congressional specification of a non-Tucker Act forum for damages suits, or any other basis, from which one can infer that application of the Tucker Act would override choices about suing the government embodied in the remedial scheme of the statute providing the basis for liability." *Id.* at 1370; *see Adair v. Bureau of Customs & Border Prot.*, 191 F.Supp.3d 129, 133-34 (D.D.C. 2016).

This critical difference is evident when examining the language of statutory schemes that *do* displace the Tucker Act, such as the Social Security Act, 42 U.S.C. § 405(g) (providing that an individual may challenge a final decision of the Commissioner of Social Security "in the district court of the United States for the judicial district in which the plaintiff resides"); the Federal Crop Insurance Act, 7 U.S.C. § 1508(j) (noting that "if a claim for indemnity is denied . . . an action on the claim may be brought against the Corporation or Secretary only in the United States district court for the district in which the insured farm is located"); or the Fair Credit Reporting Act, 15 U.S.C. § 1681p (establishing that "[a]n action to enforce any liability created under this title . . . may be brought in any appropriate United States district court").

Although the IFA's remedial scheme may be otherwise comprehensive, it still does not give jurisdiction to "identified courts." *Abbey*, 745 F.3d at 1369; *cf. Hinck v. United States*, 550 U.S. 501, 506 (2007) (defining a "precisely drawn, detailed statute," as one "that, in a single sentence, provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief."). Thus, the only way that the Court can determine what qualifies as a "court of competent jurisdiction" is by effectively incorporating the Tucker Act. And upon doing so,

it is clear that the Tucker Act's grant of exclusive jurisdiction to the Court of Federal Claims is undisturbed by the IFA.[4]

A transfer of venue at this late stage of litigation may serve to prolong an already protracted legal battle. But the sole alternative available to the Court—outright dismissal—would almost certainly prove to be even more detrimental to the interests of justice and judicial economy.[5] Consequently, a transfer is appropriate.

### b. Vacatur

The remaining question before the Court is whether the March 29, 2024, denial of GALIC's motion for summary judgment, (Doc. 46), should stand. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) ("The validity of a court order depends on the court having jurisdiction over the subject matter and the parties."). In response to GALIC's cross-motion, the Secretary cites to a bankruptcy opinion from the Northern District of Ohio for the proposition that "[e]ven if a court makes an error regarding the scope of its jurisdiction, considering the 'value and importance of finality,' judgments are not void under Rule 60(b)(4) unless they present 'glaring and fundamental jurisdictional infirmit[ies]' or a 'clear usurpation of power.'" (Doc. 52, PageID 9249) (quoting *In re Horvath*, 572 B.R. 864, 876 (Bankr. N.D. Ohio 2017)).

But that standard is inapposite here, in large part because "an order denying summary judgment is interlocutory, so it 'may be revised in the district court's discretion

---

[4] Substantially less clear to the Court is why the Secretary waited until now—five years after the dismissal of all but GALIC's breach of contract claim and request for a declaratory judgment—to raise the issue of Tucker Act jurisdiction. But that question must be left for a different day.

[5] As GALIC notes in its response, outright dismissal could prove to be prejudicial, thus further weighing in favor of transfer. *See Sosa v. Sec'y of Defense*, 47 F. App'x 350, 352 (6th Cir. 2002) ("Under 28 U.S.C. § 2501, a claim brought in the Court of Federal Claims must be filed within six years after the claim first accrues.").

until final judgment.'" *Nat'l Waste Assocs., LLC v. Lifeway Christian Res. of the S. Baptist Convention*, 637 F.Supp.3d 514, 516 (M.D. Tenn. 2022) (quoting *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 508 (6th Cir. 2022)). Rather, "the correct starting point in the analysis is the well-recognized principle that district courts possess the discretion to reconsider their interlocutory orders at any time," and "a district court may modify, or even rescind, such interlocutory orders." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945 (6th Cir. 2004) (cleaned up); *see also ACLU of Ky. V. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (noting that in such circumstances, a district court is "free to reconsider or reverse its decision for any reason").

Because the Tucker Act's jurisdictional provision controlled following the Court's 2019 order dismissing all but GALIC's breach of contract and declaratory judgment claims, the Court subsequently "lacked jurisdiction to entertain [the summary judgment] claims" in the first place, and the denial of summary judgment must be vacated. *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004); *see Beanstalk Innovation, Inc. v. SRG Tech., LLC*, No. 1:17-CV-553, 2019 U.S. Dist. LEXIS 89420, *5 (S.D. Ohio May 29, 2019); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, CV 01-10396, 2004 U.S. Dist. LEXIS 27574, *8 (C.D. Cal. Nov. 15, 2004) (noting that "a district court's ruling on the merits of a case is a nullity if the court lacked jurisdiction at the time of the ruling").[6] As a result, the Court now opts to exercise its plenary power to vacate, on jurisdictional grounds, the denial of summary judgment.

---

[6] To be clear, only upon the dismissal of GALIC's claims sounding in tort was jurisdiction vested solely in the Court of Federal Claims. Therefore, this vacatur and transfer should *not* be read to affect the Court's ruling of June 3, 2019, (Doc. 20), nor should it be interpreted as a comment on the merits of any claim.

## IV. CONCLUSION

For the foregoing reasons, the Secretary's motion, (Doc. 49), is **GRANTED in the alternative**, and GALIC's motion, (Doc. 51), is **GRANTED**. The Court's denial of summary judgment, (Doc. 46), is **VACATED**, and the Clerk is ordered to **TRANSFER** this matter to the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**

>　　　　　　　　　　　　　　　　 */s/ Michael R. Barrett*
>　　　　　　　　　　　　　　　　Michael R. Barrett
>　　　　　　　　　　　　　　　　United States District Judge